**Application of Darrell NACOTEE for a Writ of Habeas Corpus.**

**No. 74–C–158.**

United States District Court,
E. D. Wisconsin.

Jan. 24, 1975.

Raymond H. Thoenig of Wisconsin Indian Legal Service, Madison, Wis., Yvonne T. Knight, Charles F. Wilkinson of Native Amer. Rights Fund, Boulder, Colo., for plaintiff.

Bronson C. LaFollette, Wis. Atty. Gen. by Robert B. McConnell, Asst. Atty. Gen., Madison, Wis., Jack J. Schumacher, Earl W. Schmidt, Dist. Atty., Shawano, Wis., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

In a decision and order dated July 10, 1974, I denied Mr. Nacotee's petition for the issuance of a writ of habeas corpus. A Menominee Indian, he claimed that the state lacked jurisdiction to prosecute him for conduct occurring on the land owned by Menominee Enterprises, Inc.

This matter is now before me on the petitioner's motion to reconsider. In the alternative, he seeks certification of probable cause for purposes of appeal. Mr. Nacotee maintains that this court erred in its determination that state jurisdiction existed pursuant to 18 U.S.C. § 1162, which is entitled "State jurisdiction over offenses committed by or against Indians in the Indian country." I conclude that my decision and order dated July 10, 1974, should stand.

### I.

In the period of time which has elapsed since this motion for reconsideration was filed, Mr. Nacotee has been

acquitted of the state charges involved here. Therefore, his immediate interest in this matter appears to have evaporated. Nevertheless, considerations of judicial economy, together with an appreciation of the nature of the issue involved and the implications it holds for a specific group, persuade me that this matter should not be dismissed on grounds of mootness. *See* American Party v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); Storer v. Brown, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). *Compare* Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed. 2d 551 (1974) with De Funis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

## II.

The petitioner claims that 18 U.S.C. § 1162 was repealed by § 899 of the Menominee Termination Act, 25 U.S.C. §§ 891–902, which was itself repealed by the terms of the Menominee Restoration Act, 25 U.S.C. §§ 903–903f. He points to 1 U.S.C. § 108, which provides that:

"Whenever an Act is repealed, which repealed a former Act, such former Act shall not thereby be revived, unless it shall be expressly so provided."

The petitioner's analysis turns upon his contention that 18 U.S.C. § 1162 (1954) was affected by the termination and restoration acts. Section 899 of the termination act, which became effective in 1961, read in pertinent part as follows:

"[A]ll statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to the members of the tribe . . . ."

The court of appeals in Anderson v. Gladden, 293 F.2d 463, 466 (9th Cir. 1961), discussed the effect upon 18 U.S. C. § 1162 of a termination act the provisions of which are quite similar to the one involved here. The court observed:

"In unambiguous terms, Public Law 280 [18 U.S.C. § 1162] withdrew fed-

eral jurisdiction over offenses committed in specified areas of Indian country by the grant of exclusive jurisdiction therein to five designated states. . . .

"In our view, this unambiguous statutory language is not obscured because Congress in the following year enacted legislation which provided comprehensive procedures for the termination of federal supervision over the property of the Klamath Indian Tribe and its members and for the termination of federal services furnished such Indians because of their status as Indians. . . .

"The 1954 [termination] enactment dealt with the relationship between the Klamath Indian Tribe and its members and the United States as the relationship then existed. But by then, pursuant to Public Law 280, any treaty right these Indians may have had to be tried in a federal court had already been terminated."

In Menominee Tribe v. United States, 391 U.S. 404, 411–412, 88 S.Ct. 1705, 1710, 20 L.Ed.2d 697 (1968), the United States Supreme Court considered the relationship between 18 U.S.C. § 1162 and 25 U.S.C. § 899:

"Public Law 280, as amended [18 U.S.C. § 1162], became the law in 1954, nearly seven years *before* the Termination Act became fully effective in 1961 . . .

"Public Law 280 must . . . be considered *in pari materia* with the Termination Act. The two Acts read together mean to us that, although federal supervision of the tribe was to cease and all tribal property was to be transferred to new hands, the hunting and fishing rights granted or preserved by the Wolf River Treaty of 1854 [and enumerated in § 1162 together with the provisions for state jurisdiction] survived the Termination Act of 1954.

"This construction is in accord with the overall legislative plan. The Termination Act by its terms provided

for the 'orderly termination of Federal *supervision* over the property and members' of the tribe. 25 U.S.C. § 891. The Federal Government ceded to the State of Wisconsin its power of supervision over the tribe and the reservation lands, as evident from the provision of the Termination Act that the laws of Wisconsin 'shall apply to the tribe and its members in the same manner as they apply to other citizens or persons within [its] jurisdiction.'

"The provision of the Termination Act (25 U.S.C. § 899) that 'all statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to the members of the tribe' plainly refers to the termination of federal supervision. The use of the word 'statutes' is potent evidence that no *treaty* was in mind."

Section 1162 not only affirmed the Menominees' treaty right to hunt and fish, it also nullified their treaty right to be free from state jurisdiction. Because it deals entirely with the status of treaty rights, as opposed to the existence of federal supervision and programs, § 1162 has been unaffected by the termination and restoration acts. See Menominee Tribe v. United States, 391 U.S. 404, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); Anderson v. Gladden, 293 F.2d 463 (9th Cir. 1961). Whether referred to as the Menominee reservation or as property held by Menominee Enterprises, Inc., the Menominees' land has remained "Indian country" for purposes of the applicability of § 1162.

■ This conclusion is borne out by the very terms of the Menominee Restoration Act, 25 U.S.C. §§ 903–903f. Section 903a(b) of that statute provides:

"The [Termination] Act of June 17, 1954, as amended, is hereby repealed and there are hereby reinstated all rights and privileges of the tribe or its members under Federal treaty, statute or otherwise which may have been diminished or lost *pursuant to such Act.* (emphasis supplied).

While they may be considered *in pari materia,* § 1162 and the Menominee Termination Act do not constitute one and the same legislative enactment. Moreover, subdivisions (d) and (e) of § 903d of the Menominee Restoration Act direct:

"(d) The Secretary [of Interior] and the Menominee Restoration Committee shall consult with appropriate State and local government officials to assure that the provision of necessary governmental services is not impaired as a result of the transfer of assets provided for in this section.

"(e) For the purpose of implementing subsection (d) of this section, the State of Wisconsin may establish such local government bodies, political subdivisions, and service arrangements as will best provide the State or local government services required by the people in the territory constituting, on the effective date of this . . . title, the county of Menominee."

In view of these several considerations as well as those advanced in my decision and order dated July 10, 1974, I conclude that 18 U.S.C. § 1162 remains a viable basis for state jurisdiction over conduct occurring on the Menominee reservation.

Therefore, it is ordered that, upon reconsideration, the decision and order of this court dated July 10, 1974, be and hereby is affirmed.

It is also ordered that the petitioner's request for certification of probable cause for purposes of appeal be and hereby is granted.