998 F.2d 1016
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Ellen CORN, Defendant/Appellant.
 No. 92-3958.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 9, 1993.*
 Decided July 12, 1993.
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Ellen Corn of assaulting and seriously injuring one Albert Waupoose while within the Menominee Indian Reservation in violation of 18 U.S.C. §§ 113(f) and 1153. Corn appeals, claiming that the government failed to prove beyond a reasonable doubt that she did not act in self-defense.[1]
 
 
 2
 Corn and Waupoose are enrolled members of the Menominee Indian Tribe of Wisconsin. The two were involved in a common-law marital relationship for twenty years. They resided in the home of Roberta Dodge, which was located on the Menominee Reservation. Jose Perez, Dodge's fiance, also resided at Dodge's home. On March 12, 1992, Corn and Waupoose consumed large amounts of alcohol at a neighbor's home. They arrived, intoxicated, at Dodge's home at around 10:00 p.m. Perez let them into the house and joined Dodge in her bedroom. Corn and Waupoose watched television in the living room for awhile, and cooked some food in the kitchen. Thereafter, they went into a bedroom and began arguing. The verbal argument quickly ripened into a physical altercation. Either Corn or Waupoose left the bedroom and opened a drawer in the kitchen and took out a knife. A few moments later Dodge heard Waupoose groan in pain and exclaim, "You fucker!"
 
 
 3
 Dodge arose from her bed and observed Waupoose lying on a bed suffering from a stab wound in his stomach. She used a telephone in the living room to call the police and the paramedics. When the police officers arrived Waupoose told them that Corn had stabbed him. The officers arrested Corn and recovered a steak knife with a bent blade and blood on it lying on a counter near the kitchen sink. Waupoose suffered life-threatening injuries as a result of the stabbing.
 
 
 4
 Corn was charged by indictment with assaulting and seriously injuring another person while within the Menominee Reservation in violation of 18 U.S.C. §§ 113(f) and 1153. Her theory at trial was that she had stabbed Waupoose in self-defense. She presented evidence that Waupoose had systematically beaten her over the twenty years of their relationship and that he had a violent demeanor on the night of the stabbing. She argued that, because she was aware of the Waupoose's violent propensities and because of the violent actions that he had taken against her on the night of the stabbing, she reasonably believed that her conduct was necessary to defend herself. The jury returned a verdict of guilty and the trial court denied Corn's motion for judgment of acquittal. Corn was sentenced to fifty-one months in prison and was ordered to pay a sum of $11,270.60 in restitution.
 
 
 5
 In challenging her conviction based upon the sufficiency of the evidence at her trial, Corn bears a heavy burden. We will uphold the jury's verdict if "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Corn was justified in using force to the extent that she reasonably believed that such conduct was necessary to defend herself against the imminent use of unlawful force. Federal Crim. Jury Instructions of the Seventh Circuit § 4.01 (1980). But she was justified in using force that was intended to cause death or great bodily harm only if she reasonably believed that such force was necessary to prevent death or great bodily harm to herself. Id. The burden was on the government to prove beyond a reasonable doubt the absence of self-defense. Mullaney v. Wilbur, 421 U.S. 684, 704 (1974); United States v. Jackson, 569 F.2d 1003, 1008 n. 12 (7th Cir.), cert. denied, 437 U.S. 907 (1978). Our review of the record leads to the conclusion that the government presented sufficient evidence for a rational jury to find beyond a reasonable doubt that Corn did not reasonably believe that stabbing Waupoose was necessary to prevent death or great bodily harm to herself.
 
 
 6
 Dodge overheard the argument and subsequent physical altercation from a bedroom adjoining the one that Corn and Waupoose occupied. She heard Corn accuse Waupoose of engaging in a romantic relationship with Dodge. During the argument she heard Corn say the word "kill" (but she could not ascertain the context) and Waupoose respond, "Well go ahead then." She then heard banging noises, which she speculated were caused by Waupoose hitting Corn's head against the wall. Thereafter, she heard one person exit the bedroom where the argument was taking place and open a kitchen drawer in which she stored knives. She believed that it was Corn who opened the drawer, but she could not explain the basis for her belief. Dodge did not hear any further arguing or physical activity in the bedroom until, a few moments after she heard the person in the kitchen, she heard Waupoose groaning in pain. Certainly a reasonable jury could conclude from this testimony that Corn, motivated by jealousy over Waupoose's purported infidelity, left the bedroom and walked to the kitchen for the purpose of obtaining a knife to stab Waupoose and then, without being pursued or provoked by Waupoose, reentered the bedroom and stabbed him in the stomach with the knife.
 
 
 7
 Corn focuses on what she perceives to be fatal flaws in the government's case. She points to the fact that Dodge could not explain why she believed that Corn, and not Waupoose, was the individual who obtained the knife from the kitchen. Yet we believe that it was not unreasonable for the jury to believe that Corn was the culprit. Corn and Waupoose had lived with Dodge for only about three weeks before the incident. Dodge testified that she and Corn did all of the cooking for the residents of the apartment and that Waupoose did not use the kitchen to cook. Therefore, it is possible that Corn knew where Dodge kept the knives, while Waupoose did not. This fact is particularly relevant, for whoever got the knife did so without searching through the wrong drawers first.
 
 
 8
 Corn also argues that the government failed to address Dodge's testimony that she heard Waupoose banging Corn's head against the wall during the altercation. She contends that this testimony supports her position that she stabbed Waupoose in self-defense. Nevertheless, Corn ignores substantial evidence that supports the jury's verdict. First, Dodge testified that she heard someone's head (she did not know whose) being smashed against the wall before she heard Corn say the word "kill" and before someone walked into the kitchen to fetch a knife. She further testified that she heard no arguing or physical altercation when the person with the knife returned to the bedroom. In addition to the stab wound in his stomach, Waupoose had suffered superficial lacerations on his left hand. It is reasonable to infer from this evidence that Waupoose did not provoke Corn into stabbing him, but rather, that Corn freely left the bedroom freely returned with the knife, and stabbed Waupoose as he attempted to fend her off with his left hand. Moreover, Corn's actions after the stabbing are inconsistent with her claim of self-defense. Immediately after she stabbed Waupoose, she attended to him by wiping blood from his wounds. She had no visible injuries. When the police and the paramedics arrived she did not request any medical attention. Nor did she tell the police that she acted in self-defense; rather, she denied that she had stabbed Waupoose. She did not raise the spectre of self-defense until four days later in an interview with agents of the Federal Bureau of Investigation.
 
 
 9
 Finally, Corn directs us to the evidence that Waupoose systematically beat her. She maintains that the government's evidence was insufficient to disprove that her awareness of these beatings, along with Waupoose's violent demeanor on the night of March 12, 1992, led her to reasonably believe that she was in imminent danger of serious bodily harm when she stabbed Waupoose. We disagree. While the fact that Waupoose beat Corn is relevant to the likelihood that Waupoose might have hit her during the argument, it does not cast significant doubt on the evidence suggesting that stabbing Waupoose was unnecessary to avoid imminent harm. As noted above, the government presented evidence that Corn freely left the bedroom, returned with a knife, and stabbed Waupoose without provocation. We conclude that, even considering the fact that Waupoose beat Corn in the past and possibly struck her on the night of March 12, the evidence in the record is sufficient for a reasonable jury to conclude that Corn did not stab Waupoose in self-defense.
 
 
 10
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 In her brief Corn also claimed that the district court lacked subject matter jurisdiction over this case. She relied on 18 U.S.C. § 1162, which states that Wisconsin "shall have jurisdiction over offenses committed by or against Indians in ... [a]ll Indian country within the state," and that 18 U.S.C. §§ 1152 and 1153, which extend federal jurisdiction to major crimes committed by Indians in Indian country, are inapplicable in Wisconsin. Nevertheless, as the government correctly pointed out (and as Corn subsequently acknowledged in her reply brief) the United States has jurisdiction over this matter by virtue of a March 1, 1976, retrocession of jurisdiction over the Menominee Reservation by Wisconsin to the United States. See Latender v. Israel, 584 F.2d 817, 823 (7th Cir.1978), cert. denied, 440 U.S. 985 (1979)