750 P.2d 959

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Linda J. HARROLD, Defendant–Appellant.**

No. 16779.

Court of Appeals of Idaho.

Jan. 27, 1988.

Linda J. Harrold, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

A jury in the magistrate division found Linda Harrold guilty of driving a motorcycle while under the influence of alcohol. She was fined $1500 and was sentenced to serve fifteen days in jail. On appeal to the district court, her judgment of conviction was affirmed. She appeals from the district court's order upholding the conviction. We also affirm.

Harrold presents a variety of challenges to the manner in which her case was processed in the magistrate division. At trial and on appeal, Harrold has appeared without the assistance of counsel. She contends these *pro se* appearances have not been voluntary.[1] Prior to trial she gave notice of her demand to utilize lay counsel. The trial court denied her demand. In Part I, below, we address her demand for "counsel of choice." In Part II, we examine the court's rulings in response to procedural motions. In Part III, we turn to Harrold's claim that the court was without jurisdiction. In Part IV, we dispose of a claim of "disability." Finally, in Part V, we respond to her contention that being required

---

1. Harrold prefers to characterize her appearance as *in propria persona*, which BLACK'S LAW DICTIONARY (5th ed. 1979) defines as "In one's own proper person." Harrold asserts that this phrase does not carry the connotation of voluntarily representing oneself, i.e., *pro se*. For example, in a document filed with the district court in support of her request to be relieved from the payment of fees for the clerk's record on appeal (discussed in Part V, *infra*), Harrold asserted she was not appearing in this case "of her own volition" but stated she "does not choose to be represented by a member of the bar, but chooses to appear in court in person on her own behalf to defend her Life, Liberty and Property against the claims of the government."

to pay the cost of the appeal record deprives her of access to the courts.

## I

■ Following her arrest, Harrold filed a "NOTICE AND DEMAND FOR COUNSEL OF CHOICE." In this notice, she moved for recognition by the trial court of her right to be assisted by counsel "who is not a member of the State Bar Association and who is not a licensed attorney." She argued that she has a constitutionally guaranteed "absolute" right to counsel of her choosing. The trial court summarily denied the motion.[2] On appeal from the magistrate division, the district court termed this demand the "main issue." After distinguishing the authority cited by Harrold, the district court concluded that the weight of authority does not favor recognizing a right to lay counsel. Accordingly, the district court denied relief to Harrold on her appeal.

Harrold argues that her right to choose counsel is guaranteed expressly by the sixth amendment to the United States Constitution, implicitly by the first amendment guarantee of free speech and as a common-law right reflected by the ninth amendment; and is protected by the prohibition against impairment of contract obligations contained in Section 10 of Article 1 of the United States Constitution. Notwithstanding the sincerity of Harrold's arguments, we are constrained, as was the district court, by our Supreme Court's decision in *State v. Brake*, 110 Idaho 300, 715 P.2d 970 (1986). In *Brake* the Court concluded that "a defendant in a criminal prosecution has no constitutional right to be represented at trial by a non-lawyer lay counsel." *Id.* at 301, 715 P.2d at 971. Harrold has not been able to distinguish her case from the conviction affirmed in *Brake* (driving with an expired license). Nearly all of Harrold's arguments were addressed in *Turner v. American Bar Ass'n*, 407 F.Supp. 451 (N.D. Texas 1975), a case cited in *Brake*. We find it is unnecessary to repeat the federal court's extensive analysis of the right to counsel. For the reasons stated in *Brake* and *Turner*, we reject Harrold's arguments and we uphold denial of her motion for counsel of choice.[3]

## II

Next, we address Harrold's allegations pertaining to procedural irregularities. At the outset, we note that the appellant has the burden of providing an adequate record on appeal so that the proceedings below can be properly reviewed for error. *State v. Sima*, 98 Idaho 643, 570 P.2d 1333 (1977). A litigant appearing without counsel is not relieved of this burden. *Id.* In pursuing this appeal, Harrold initially did not provide any transcript of the proceedings in the magistrate division. During the pendency of the appeal, however, the record was augmented by order of this Court to include transcripts of any of the proceedings in the courts below, which Harrold deemed necessary to support her contentions on appeal. Accordingly, the augmented record on appeal includes transcripts of only certain preliminary motion hearings. Our review for procedural defects is necessarily limited to the record as presented by Harrold. Consequently, we will not review certain questions raised by Harrold, such as one relating to an "unscheduled pretrial conference" and another concerning inadequate opportunity to review a presentence report, because of the lack of any record to substantiate those claims.

## A

On appeal, Harrold contends that a number of her motions were erroneously de-

---

2. The order "dismissing" this motion was not included in the clerk's record filed in this appeal. However, a copy was included as an appendix to Harrold's brief. The state has not contested its authenticity. Therefore we presume it accurately depicts a document inadvertently omitted from the clerk's record.

3. Although not rising to the level of a constitutional right, there appears to be a statutory right under I.C. § 3–104 to avail oneself of lay assistance in certain civil small claims actions. However, Harrold does not argue that this case fits within that statute. Neither does this case require us to decide whether a minor or incompetent person may receive assistance in court from a parent or guardian.

nied. These include a motion to dismiss, an application for a writ of habeas corpus, a motion for continuance, and a "notice and demand for rights *sua sponte*." We examine each in turn.

█ With respect to the motion to dismiss, Harrold failed to present any meaningful argument. The written motion included unsubstantiated claims that her rights had been violated. At the motion hearing, Harrold explained only that it was "based on the reading of the statute," without being more specific. She failed to show any other cause for granting this motion. Therefore, we affirm the court's decision denying the motion to dismiss.

█ Harrold alleges that a "motion for a writ of habeas corpus" filed in her behalf by William Harrold was denied solely because the application was not submitted by the incarcerated person. At the hearing, the magistrate stated:

> You filed a Motion for Writ of Habeas Corpus. Exactly what do you want to do with the Motion, and why? This isn't even submitted by yourself so I am not going to pay any attention to it unless you want to submit one in your own behalf. Mr. William Harrold is not submitting anything in this court.

Linda Harrold did not respond. The motion was summarily denied. Apparently, a direct appeal was not taken from denial of this application.

We do not condone the magistrate's apparent impatience with Harrold. Nor do we concur with the implicit conclusion of the court that an application for a writ of habeas corpus must be submitted specifically by the aggrieved party. *See* I.C. § 19–4202 (application for writ of habeas corpus may be signed by the party for whose relief it is intended or by another person in his or her behalf). However, our examination of the application reveals that in substance it sought Harrold's release on bail or on her own recognizance pursuant to I.C.R. 46. Apparently, Harrold had been released on bail the day after her arrest—

the same day the "motion" was filed—and she was no longer incarcerated when the motion was heard by the judge. Accordingly, the issue was moot and the motion was properly denied.

█ On the basis of the following proceedings, Harrold sought to postpone her trial. On July 10, 1986, the magistrate scheduled a trial for September 12. Harrold filed a motion for "separation" of a number of charges pending against her. The motion was denied. On August 14, Harrold filed an interlocutory appeal. However, the district court dismissed that appeal as being premature. She appealed further to the Idaho Supreme Court and asked the district court to order a delay of her trial while the interlocutory appeal was before the Supreme Court. This request was denied. So far as the record discloses, she sought no stay from the Supreme Court. That Court eventually dismissed her appeal as well.

In the meantime, the district court remanded the case to the magistrate division on September 8. Apparently, notice of the district court's decision was mailed on September 9. According to Harrold, this written notice was not received until after the trial on September 12. Apparently, she became aware of the district court's order by some other means on September 11. On that same day she sought a continuance of the trial from a magistrate.[4] This request also was denied.

Harrold asserts that being informed of the dismissal of her appeal on the day before trial deprived her of the opportunity to prepare her defense. Specifically, she maintains this untimely notice inhibited her ability to subpoena witnesses. The thrust of Harrold's argument is that the magistrate erred by not granting the continuance request.

A motion for continuance is addressed to the sound discretion of the court. *State v. Hopple*, 83 Idaho 55, 357 P.2d 656 (1960). We review the court's decision for an abuse of that discretion. Once a trial date has

---

4. The record indicates this motion, among others, was heard by a magistrate other than the one who eventually presided over Harrold's trial.

been set, the moving party has the burden of showing sufficient reason for a continuance of the action. *See* I.C. § 19–3502. In the instant appeal, Harrold does not argue the merits of her separation motion; rather she contends that the belated notice of the district court's dismissal of her interlocutory appeal prevented her from preparing her defense.

We do not find this argument persuasive. Unless and until a stay is issued, a litigant may not pause in preparation for trial while interlocutory appeals are pending. Harrold suggests that she could not move forward until her motion for separate trials on the various charges pending against her—of driving without privileges, leaving the scene of an accident, and driving while intoxicated—had been resolved. The record does not indicate the disposition of these charges other than the DUI conviction from which this appeal was taken. However, even if her motion for separation had been granted, a defense to each charge would have been necessary. At most, tactical decisions would have been affected. Harrold had been informed of the date of her trial. The trial court had denied her motions. Harrold could not simply rest on the assumption that a higher court would reverse the magistrate's decision. Harrold has made no particularized showing of actual prejudice by the belated nature of the district court's dismissal of her interlocutory appeal. Therefore, we are unable to hold that the magistrate abused her discretion in conducting the trial as scheduled.

▪ Harrold also moved for "rights *sua sponte*," explaining that, as a layman, she was entitled to have the court on its own initiative alert her of any legal rights she might possess, apparently to avoid an inadvertent waiver. The court concluded that Harrold had been adequately informed of her rights when arraigned. Harrold argues that the trial court's failure to inform her again of her rights denied her due process. We disagree.

It is Harrold's right to counsel which is designed to provide her with competent legal advice, including advice on the exercise of all other rights. Because she was charged with an offense with a high likelihood of—and eventually resulting in—a sentence of incarceration, she could have sought appointment of counsel upon a showing of indigency. I.C.R. 44; *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). On the other hand, Harrold also had the right to refuse to be represented by a court-appointed lawyer and to represent herself. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Adams v. United States,* 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). A judge sitting to try the case is not required to fill the role of advisor. Moreover, Harrold does not point to any specific failures by the trial court to protect or to preserve her rights. Harrold has not demonstrated in what manner she was subsequently prejudiced by any silence on the part of the court. Absent a showing that her rights were in fact violated, we find no error in the court's denial of this motion.

### B

▪ With respect to due process, Harrold also contends her rights were infringed by the magistrate's failure to timely notify her of the reasons for denying her offer of a bond to meet bail. According to Harrold, her offer of a surety bail-bond of $3000, accompanied by a motion for writ of mandamus, was rejected by the court. She contends she was not given a copy of the statement of the reason denying a surety bond for nearly three months. The record before us is incomplete with respect to the bond rejection proceedings. Harrold represents that the magistrate denied the motion because a bondsman must appear personally before the court to qualify the bond.

In any event, it appears the problem was soon corrected and Harrold was released on bail. Harrold has not demonstrated that any delay in providing written notice of the reason for initial rejection of her offer to post a surety bond was prejudicial to her defense. We find no error with respect to this issue.

## C

■ Harrold also argues that the trial court erred in dismissing those motions which were not opposed by the state. She contends that in doing so the judge improperly acted as an advocate for the state. The motions which were summarily denied include continuance motions, a separation motion, a motion to appoint a "public prosecutor," a "grand jury" demand, the demand for counsel of choice, the demand for rights *sua sponte*, and a motion to dismiss. The court deemed many of these motions "spurious and frivolous." We are not persuaded that the magistrate acted improperly. Many of these motions related directly to the court's management of the case. Others were clearly contrary to state law. A court's duty is to rule correctly on motions regardless of whether or not they are opposed. Here, there is no showing that the judge ruled incorrectly. Accordingly, we hold that Harrold has failed to show any violation of due process.

## III

■ Harrold also contends the court was without jurisdiction to try her case. She asserts that the magistrate and all jurists of Idaho are without power under the state and federal constitutions due to a defect in the judges' oath of office. As we understand her argument, she believes the oath embodied in I.C. § 59–401 is not a true "oath" as required of judges by Article 6 of the United States Constitution because the prescribed oath makes no reference to or invocation of God.[5] Harrold cites no legal authority for that proposition.

Article 6, clause 3, of the federal Constitution requires that "The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executives and *judicial Officers*

both of the United States and *of the several States*, shall be bound by Oath or Affirmation, to support this Constitution; ...." (Emphasis added.) The article does not set forth particular language to be used in the form of an oath. However, the Constitution does contain language of the oath to be taken by the supreme executive officer of the United States—the President. Article 2, § 1 provides: "Before he enter on the Execution of his Office, he shall take the following Oath or Affirmation:—'I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States.'" Notably, that oath does not include an invocation of a diety.

Shortly after the federal Constitution was ratified, the Congress met in its initial session. The first legislation adopted by the Congress was an act relating to the oath to be taken by the members of Congress. That act, approved June 1, 1789, provided in part: "[T]he oath or affirmation required by the sixth article of the Constitution of the United States, shall be administered in the form following, to wit: 'I, A.B. do solemnly swear or affirm (as the case may be) that I will support the Constitution of the United States.'" 1 Stat. 23 (1789). The same act further provided: "And the members of the several State legislatures, and all executive and judicial officers of the several States, who shall be chosen or appointed after the said first day of August [next], shall, before they proceed to execute the duties of their respective offices, take the foregoing oath or affirmation, which shall be administered by the person or persons, who by the law of the State shall be authorized to administer the oath of office; ...." *Id.* As with the President's oath, the form of the oath

---

5. Idaho Code § 59–401 (including parenthetical language) provides:

Before any officer elected or appointed to fill any office created by the laws of the state of Idaho enters upon the duties of his office, he must take and subscribe an oath, to be known as the official oath, which is as follows:

"I do solemnly swear (or affirm, as the case may be) that I will support the Constitution of

the United States, and the Constitution of the State of Idaho, and that I will faithfully discharge the duties of (insert office) according to the best of my ability."

Prior to 1983, I.C. § 59–401 included the words "So help me God" in the oath. *See* 1983 Idaho Sess. Laws, ch. 160 p. 460–61 (repealing former § 59–401 and enacting new § 59–401, quoted above).

adopted by the members of Congress did not contain words of invocation to God.

■ BLACK'S LAW DICTIONARY (5th ed. 1979) has this to say concerning the word "oath:"

> In its broadest sense, the term [oath] is used to include all forms of attestation by which a party signifies that he is bound in conscience to perform the act faithfully and truly. In a more restricted sense, it excludes all those forms of attestation or promise which are not accompanied by an imprecation.

*Id.* at 966. After examining the language of I.C. § 59–401, in light of Article 6 of the federal Constitution and its related history, we believe that the term "oath" should be interpreted in the broad sense described by BLACK'S DICTIONARY. We hold that the language of the oath set forth in I.C. § 59–401 satisfies the requirements of the federal Constitution.[6] We conclude that Harrold's argument to the contrary is without merit.

### IV

■ Harrold also contends that I.C. § 5–236 bars her conviction.[7] Apparently she interprets the statute as barring criminal actions against "disabled" parties. She asserts she was somehow "disabled" by the state's resistance to her various motions filed in this case. We need not reach the merits of her disability claim. The function of I.C. § 5–236 is to determine the date of accrual of civil causes of action for purposes of the statute of limitation. This statute simply does not pertain to criminal prosecutions.

### V

■ Finally, we reach Harrold's claim that she should not have been required to pay a fee for the clerk's record in this appeal. Provision for the fee is made by statute and court rule. Section 19–2803 of the Idaho Code provides that the clerk's record in an appeal of a criminal action shall be prepared, processed and transmitted to the Supreme Court as provided by Rule of the Supreme Court. Rule 27(b), I.A.R., empowers the clerk of the district court to charge and collect a fee of $1.25 for each page of the record. The payment of the fee by an appellant may be waived by order of the district court, I.A.R. 27(e), upon a finding of indigency and inability to pay the fee, determined under I.C. § 31–3220. The process to arrive at such a finding and order is initiated by an affidavit demonstrating that the appellant is indigent and unable to pay for the preparation of the record. I.C. § 31–3220.

Here, Harrold made application to the district court for waiver of the fee for the clerk's record on appeal. However, she did not assert that she was indigent or was unable to pay the requisite fee. She argued only that appellate review of her action should not be conditioned upon the payment by her of any costs. Upon considering Harrold's request, the district court concluded that waiver of the fee should be denied because Harrold's request was not based on a claim of indigency. The court then ordered Harrold to pay an estimated cost for the preparation of the clerk's record. Harrold complied.

Harrold contends that the fee charged to an appellant for preparation of the clerk's record on appeal violates Article 1, § 18, of

---

**6.** We acknowledge that in a case questioning the authority of certain persons to administer oaths, the Idaho Supreme Court mentioned the nature of an oath in connection with the giving of testimony. The Court said:

> [An Idaho statute] provides in express terms that every county officer and every justice of the peace may administer and certify oaths. An oath being a solemn appeal to the Supreme Being in attestation of the truth of some statement, and an outward pledge that one's testimony is given under an immediate sense of responsibility to God....

*State v. Jones,* 28 Idaho 428, 439, 154 P. 378, 381 (1916). However, because the issue in *Jones* related not to the form of an oath but rather to the authority of certain persons to administer oaths, the Court's definition of a testimonial oath clearly is a dictum. It is not persuasive on the question of whether I.C. § 59–401 is in conformity with the federal Constitution.

**7.** Idaho Code § 5–236 states:

> When two (2) or more disabilities coexist at the time the right of action accrues the limitation does not attach until they are removed.

the Idaho Constitution. That section provides:

*Justice to be freely and speedily administered.*—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice.

Harrold argues that charging a fee for the record required on appeal constitutes the "sale" of justice. Therefore, she seeks the refund of the fee paid for the clerk's record.

Harrold's challenge is not novel. In 16A AM.JUR.2d *Constitutional Law* § 614, p. 560–61 (1979), we find:

Legislation and orders concerning costs and fees have often been assailed under constitutional provisions insuring justice without sale. It is a general rule that reasonable costs may be imposed on litigants without violating these constitutional guaranties; the constitutional right to obtain justice freely and without purchase is not the right to have judicial proceedings carried on without expense to the parties, in the form of reasonable, legally prescribed fees or costs, for it was never meant that a litigant should have the right to conduct his suit in court without cost.... However, indigents have been afforded protection in many respects so that they will not be denied access to the courts. [Footnotes omitted.]

It is well established that an indigent person may not be foreclosed from pursuing an appeal simply because of financial inability to pay fees required by statute or rule. *See, e.g., Graves v. Cogswell*, 97 Idaho 716, 552 P.2d 224 (1976). The constitutional prohibition against "sale" of justice is not implicated by the collection of a reasonable fee from a person who is able to pay. Harrold does not assert that the fee set by I.A.R. 27(b), $1.25 for each page of the record, is an unreasonable amount. Because Harrold made no showing that she should be relieved from the payment of the fee for the clerk's record, on grounds of

indigency, we affirm the district court's order requiring the payment of the fee.

In sum, we find no violation of Harrold's constitutional rights which requires a reversal of her judgment of conviction. The order of the district court, upholding the judgment of conviction, is affirmed.

BURNETT and SWANSTROM, JJ., concur.