149 P.3d 857

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Meghan BETTWIESER, Defendant–Appellant.**

No. 32083.

Court of Appeals of Idaho.

Sept. 7, 2006.

Rehearing Denied Oct. 17, 2006.

Review Denied Jan. 22, 2007.

Meghan Bettwieser, Boise, pro se appellant.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Meghan Bettwieser appeals her conviction for committing the infraction of following too closely. Bettwieser's principal contention is that the magistrate court erred in refusing to allow Bettwieser's father, a non-lawyer, to represent her in the proceedings. We affirm.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

After she was involved in an automobile accident, Bettwieser, then a nineteen-year-old college student, was issued a citation for the infraction of following too closely, Idaho Code § 49–638.[2] She pleaded not guilty and the matter was scheduled for a court trial on March 5, 2004. Bettwieser apparently had a college project due on that date and did not appear, but her father, Martin Bettwieser ("Martin"), was present. Rather than entering a default judgment against Bettwieser, the magistrate reset the trial for April 5, 2004.[3] The trial date was continued several

---

2. The statute provides: "The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicle, the traffic upon and the condition of the highway."

3. We reject Bettwieser's contention that this first continuance was due to the State's actions. Although the officer was not able to testify on that day because of his injuries, the trial date was reset not because he was absent, but because Bettwieser was not present. In resetting the trial date, the court was being lenient and accommodating; it could have entered a default for Bettwieser's failure to appear, thus relieving the

more times at the State's request because the officer who had issued the citation had been seriously injured in the line of duty. The trial date was ultimately set for August 6, 2004.

Before the matter came to trial, Martin signed and filed several motions and a request for discovery, purporting to act "for and on behalf of Meghan Bettwieser, acting in a pro-se manner." He also appeared at several hearings on behalf of the still-absent Bettwieser. The State did not respond to the discovery request, and Bettwieser signed and filed a motion for dismissal or other sanctions for the State's nonresponse. In the motion, Bettwieser stated "I have waived my right to have an attorney of law represent me and that I elected to handle the matter pro-se and that I have substituted my pro-se status to my father." The State was ordered to respond or object to the discovery but no sanctions were ordered. On June 1, 2004, the State complied by filing an objection that the discovery request was invalid because Martin was not a licensed attorney and there was no statutory authority permitting him to act on his adult daughter's behalf. The State also asserted that the discovery requests were outside the scope of Idaho Criminal Rule 16. Later, the State moved that Martin be required to show cause why he should not be held in contempt for practicing law without a license.

At a hearing on July 28, 2004, the magistrate declined to hold Martin in contempt, but concluded that Martin could not represent Bettwieser in the proceedings. The magistrate further ordered that all the pleadings filed by Martin, including the request for discovery, be stricken. A court trial was conducted on August 6, 2004. On that date, Bettwieser appeared for the first time and represented herself. The magistrate found that she had committed the infraction of following too closely. Bettwieser appealed to the district court, which affirmed. She again appeals, contending that the magistrate erred in not permitting Martin to continue to represent Bettwieser and in striking the discovery request he filed. She also contends that she was deprived of due process because the magistrate delayed in making a decision

State of the burden to present evidence. Idaho

on these matters until one week before trial. Lastly, she asserts that the trial evidence was insufficient to prove that she committed the infraction.

## II.

## ANALYSIS

■ Where, as here, there has been an intermediate appeal to the district court, we base our review upon the record of the magistrate proceedings and render our decision independent of, but with due regard for the district court's decision. *State v. Croston*, 124 Idaho 471, 472, 860 P.2d 674, 675 (Ct. App.1993).

### A. Representation by Martin

Bettwieser's primary contention is that her father was her lawful representative in the proceedings below and that the magistrate therefore erred in preventing him from representing Bettwieser at trial.

#### 1. Lay representation under Idaho Code § 3–104

■ Generally speaking, "a defendant in a criminal prosecution has no constitutional right to be represented at trial by a non-lawyer lay counsel." *State v. Brake*, 110 Idaho 300, 301, 715 P.2d 970, 971 (1986). Bettwieser does not rely on the constitutional right to counsel, however, but upon the Idaho statute directed at preventing individuals from practicing law without a license, Idaho Code 3–104. The statute provides as follows, with the portion upon which Bettwieser relies italicized:

If any person shall practice law or hold himself out as qualified to practice law in this state without having been admitted to practice therein by the Supreme Court and without having paid all license fees now or hereafter prescribed by law for the practice of law he is guilty of contempt both in the Supreme Court and district court for the district in which he shall so practice or hold himself out as qualified to practice. *Provided, that any person may appear and act in a magistrate's division of a district court as representative of any par-*

Infraction Rule 6(b), 8(b).

*ty to a proceeding therein so long as the claim does not total more than $300, and so long as he or his employer has no pecuniary interest in the outcome of the litigation, and that he shall do so without making a charge or collecting a fee therefor.*

This statute's prohibition against practicing law without a license unquestionably applies to representation of another in court proceedings and the drafting and filing of pleadings for another. *See Idaho State Bar v. Meservy,* 80 Idaho 504, 508, 335 P.2d 62, 64 (1959); *In re Matthews,* 57 Idaho 75, 83, 62 P.2d 578, 581 (1936); *State v. Wees,* 138 Idaho 119, 122, 58 P.3d 103, 106 (Ct.App. 2002). Bettwieser contends, however, that her father's actions fall under the exception for claims of $300 or less because infractions are punishable only by fines of up to $100, I.C. §§ 18–111, 49–236(2). The heart of the issue, therefore, is whether a bench trial for the traffic infraction of following too closely qualifies as a "claim."

The interpretation of a statute is an issue of law over which this Court exercises free review. *State v. Parker,* 141 Idaho 775, 777, 118 P.3d 107, 109 (2005); *State v. Yager,* 139 Idaho 680, 689, 85 P.3d 656, 665 (2004). If the statutory language is unambiguous, " 'the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction.' " *Garza v. State,* 139 Idaho 533, 536, 82 P.3d 445, 448 (2003) (quoting *Payette River Property Owners Ass'n v. Board of Comm'rs of Valley County,* 132 Idaho 551, 557, 976 P.2d 477, 483 (1999)). The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Garza,* 139 Idaho at 536, 82 P.3d at 448. Where the statute is ambiguous, we attempt to ascertain legislative intent, and in construing the statute we may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute. *Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 134, 997 P.2d 591, 595 (2000). *See also Garza,* 139 Idaho at 535–36, 82 P.3d at 447–48.

Idaho appellate courts have never directly addressed the provision of I.C. § 3–104 that is in question here, although the statute was mentioned in passing fashion in *State v. Harrold,* 113 Idaho 938, 939, 750 P.2d 959, 960 (Ct.App.1988). There, the defendant was charged with misdemeanor driving under the influence of alcohol and asked to be represented at trial by a lay person. This request was denied. On appeal, this Court rejected a constitutional argument, and noted in an aside that "although not rising to the level of a constitutional right, there appears to be a statutory right under I.C. § 3–104 to avail oneself of lay assistance in certain civil small claims actions." *Id.* at 940 n. 3, 750 P.2d at 961 n. 3.

This comment in *Harrold* was *dicta,* but we agree with its interpretation that I.C. § 3–104 permits representation by lay persons only in minor civil actions in which no more that $300 is at stake. The term "claim" as used in section 3–104 ordinarily refers to a civil claim for damages. That the legislature intended this provision to be limited to civil matters appears to be confirmed by the history of the statute. Section 3–104 took its current form through an amendment in 1969. Before that amendment, the statute provided that "any person may appear and act in a *justice court* as representative of any party to a proceeding therein. . . ." (Emphasis added.) The amendment was enacted the same year that justice of the peace courts were legislatively abolished and the magistrate's division was created. *See* 1969 Idaho Sess. Laws, ch. 100–19, 121–28. It substituted "magistrate's division of a district court" for "justice court" and added the language limiting lay representation to proceedings where the claim totals no more than $300. 1969 Idaho Sess. Laws, ch. 278 at 821–22. Significantly, the jurisdiction of the justice of the peace courts, where lay representation was theretofore allowed, included both civil cases of less than $300, I.C. § 1–1403 (superseded 1969), and certain misdemeanors, I.C. § 1–1406 (superseded 1969). It appears that by amending the statute to allow lay representation only on "claims" not exceeding $300, the legislature consciously elected not to continue allowing lay representation in misdemeanor proceedings.

Although there is language in I.C. § 49–110(5) defining "infraction" as a "civil

public offense,"[4] traffic infractions are criminal in nature and are treated as criminal for both constitutional and statutory purposes. *State v. Lynch,* 126 Idaho 388, 391, 883 P.2d 1080, 1083 (1994); *State v. Bennion,* 112 Idaho 32, 35, 730 P.2d 952, 955 (1986). The $100 penalty for commission of an infraction is a fine, and it cannot be said that when the State prosecutes an individual for a traffic infraction, it has brought a "claim" in the nature of a civil action for damages. If the legislature had intended to allow lay representation for criminal matters, it would not have used the word "claim" in the statute. We therefore hold that the exception in I.C. § 3–104 does not authorize representation by a lay person in infraction proceedings.[5]

## 2. Parental representation of a minor

Bettwieser also argues that the court should have permitted her father to represent her because she was a "minor." In *State v. Ritchie,* 114 Idaho 528, 531, 757 P.2d 1247, 1250 (Ct.App.1988), we held that under certain circumstances, a minor could receive assistance in court from a non-attorney parent or guardian. This exception is inapplicable, however, because Bettwieser was nineteen years old when she was cited for the infraction. In Idaho, the age of majority is eighteen years, I.C. § 32–101, notwithstanding that I.C. §§ 23–603 and –604 set a higher age for the purchase and consumption of alcohol. Bettwieser's arguments regarding the policies of state agencies, health insurance companies and rental car dealers, and the imposition of certain age requirements for the holding of government office, have no bearing on the legal definition of "minor."

## B. Order Striking Discovery

After determining that Martin could not lawfully represent Bettwieser, the magistrate struck the motions he had filed and the request for discovery. Bettwieser contends that this was in error. She first contends that the State waived its objections to the discovery request by failing to make a timely response. Idaho Criminal Rule 16(e)(1) requires that parties respond to discovery requests within fourteen days of service. The failure to timely serve a response constitutes a waiver of any objections to the request unless the court otherwise orders upon a showing of good cause or excusable neglect. I.C.R. 16(e)(2). The time limit of Rule 16(e)(1) arises, however, only when there has been a properly served request for discovery. We have held that Martin was not entitled to represent Bettwieser. Therefore, he could not properly sign and serve discovery requests on her behalf. He was not a party or the lawful representative of any party and thus did not have standing to file motions or discovery requests. *Kerns v. Morgan,* 11 Idaho 572, 579, 83 P. 954, 956 (1905) (stranger to the proceeding could not obtain an order). Accordingly, we conclude that the magistrate court did not err in implicitly finding good cause for the State's nonresponse or in striking the discovery requests.

## C. Timeliness of Magistrate's Order Disallowing Representation by Martin

Although the magistrate court ultimately made the correct rulings, it did so only after allowing Martin to appear for Bettwieser on several occasions and delaying its decision about the discovery for many weeks. Bett-

---

4. Idaho Code 49–110(5) states: " 'Infraction' means a civil public offense, not constituting a crime, which is not punishable by incarceration and for which there is no right to a trial by jury or right to court-appointed counsel, and which is punishable by only a penalty not exceeding one hundred dollars ($100) and no imprisonment."

5. Bettwieser also argues that by giving Martin a power of attorney, she empowered him to exercise her right to self-representation. She contends that I.C. § 15–5–501 permits this delegation of a personal right. That statute, however, is of no relevance. It merely prescribes words that must be used in a power of attorney to make

it "durable," i.e., a power of attorney that is exercisable notwithstanding the principal's subsequent disability or incapacity. It does not delineate what powers may be exercised by virtue of a power of attorney. Bettwieser cites no authority for the proposition that one may, via a power of attorney, empower another to take actions that are otherwise prohibited by statute, as I.C. § 3–104 prohibits the practice of law without a license. Therefore, we do not further address this argument. *See State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (When issues on appeal are not supported by propositions of law, authority, or argument, they will not be considered.).

wieser argues that she was unfairly prejudiced by the court's permissively allowing Martin to represent Bettwieser during most of the case, and then reversing this position one week before trial. We interpret this as an argument that her right to due process was violated because she did not have adequate time to prepare her defense.

■■■■■ Due process demands an opportunity to be heard "at a meaningful time and in a meaningful manner." *Gray v. Netherland,* 518 U.S. 152, 182, 116 S.Ct. 2074, 2090, 135 L.Ed.2d 457, 482 (1996). Thus, due process is violated if the defendant is not afforded "a reasonable opportunity to meet [the charges] by way of defense or explanation." *In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682, 695 (1948). *See also State v. Montroy,* 37 Idaho 684, 690, 217 P. 611, 614 (1923) (It is the public policy of this state, disclosed by constitutional guaranties as well as by numerous provisions of the statutes, to accord to every person accused of crime . . . every reasonable opportunity to prepare his defense and to vindicate his innocence upon a trial.). It is a necessary corollary that in order to muster a defense, the defendant must have sufficient time to do so.

■■■■■ Bettwieser contends that because the case went to trial only one week after Martin was removed from the case, she did not have adequate time to resubmit the discovery that Martin had filed or to prepare to represent herself at trial. After examining the timeline and the actions that Bettwieser chose to take or forego, however, we are not convinced that she was deprived of due process. On June 1, 2004, several months before trial, the State responded to Martin's discovery request by objecting that it had not been submitted by a person who had standing to file anything in the case. Bettwieser could have easily cured this defect by resubmitting the discovery under her own name, but she did not do so. As early as May 13, 2004, the court suggested that it might not permit Martin to represent Bettwieser at

trial, and she was therefore on notice of this possibility long before trial. Moreover, when Martin was barred from representing Bettwieser and the discovery he had filed was disallowed one week before trial, Bettwieser could have requested a continuance if she did not believe that she could prepare for trial in this amount of time. She made no such motion, and thus cannot now claim that a week was insufficient time for her to muster her defense.[6]

## D. Sufficiency of the Evidence

■■■■■ Bettwieser also argues that the court erred in finding her guilty of following too closely. When a criminal action has been tried to a court sitting without a jury, appellate review of sufficiency of the evidence is limited to ascertaining whether there is substantial evidence upon which the court could have found that the prosecution met its burden of proving the essential elements of the crime beyond a reasonable doubt. *State v. Smith,* 139 Idaho 295, 298, 77 P.3d 984, 987 (Ct.App.2003). When we review the record to determine whether substantial evidence exists we are precluded from substituting our judgment for that of the fact finder as to the credibility of witnesses, the weight of testimony, and the reasonable inferences to be drawn from the evidence. *State v. Vandenacre,* 131 Idaho 507, 510, 960 P.2d 190, 193 (Ct.App.1998); *State v. Hickman,* 119 Idaho 366, 367, 806 P.2d 959, 960 (Ct.App.1991).

■■■■■ The State called one witness at trial, the driver of the car that Bettwieser struck. The witness testified that on a clear, dry day, Bettwieser's car rear-ended his when he had to brake suddenly because the car in front of him stopped. The witness testified that as he approached the rear of the car in front of him, he felt the impact of Bettwieser's car from behind him. Like Bettwieser, the witness believed that he had been traveling at a safe distance, but that his reaction was not quick enough to avoid a collision. He also received a citation. This witness's testimony

---

**6.** Bettwieser contends that she did not know that the motions and discovery request filed by Martin had been struck from the record until the day of trial. However, Bettwieser's failure to appear at the previous hearings in her own case, causing her alleged unawareness of these developments, is not an error of the State or the court. Con-

trary to Bettwieser's assertions, the court was not required to prepare and serve a formal written order expressing its ruling on the issue. She cites Idaho Rule of *Civil* Procedure 77(d), which is inapplicable. *See instead* I.C.R. 12(e) and (g), Idaho Infraction Rule 1, and Misdemeanor Criminal Rule 1.

was sufficient to support the magistrate's finding that Bettwieser was following more closely than was reasonable and prudent under the circumstances.

## III.

### CONCLUSION

We find no merit in Bettwieser's various challenges to her conviction for following too closely. The judgment of conviction is therefore affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.