**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Louis HOODIE,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Aaron Daniel KENNEDY,**
**Defendant-Appellant.**

**Nos. 78–1172, 78–1173.**

United States Court of Appeals,
Ninth Circuit.

Dec. 21, 1978.

Susan F. Mandiberg, Asst. Federal Public Defender, Portland, Or., for defendants-appellants.

William Youngman, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and GRANT *, District Judge.

CHOY, Circuit Judge:

Hoodie and Kennedy were convicted of burglary in federal district court and placed on probation. They appeal, claiming that the federal court lacked jurisdiction to hear their cases. We agree and thus vacate the judgments below.

### Statement of the Case

On June 25, 1977, the Tribal Office Building on the Burns Paiute Reservation was burglarized. Appellants, enrolled members of the Burns Paiute Indian tribe, were charged with the crime in federal court. Appellants moved for dismissal, contending that 18 U.S.C. § 1162(a)[1] provided for exclusive Oregon jurisdiction over the matter.

The district court denied the motion, holding that federal jurisdiction obtained given 25 U.S.C. § 1321(a).[2] *United States v. Hoodie*, 441 F.Supp. 835 (D.Or.1977). The court acknowledged that § 1162, passed in 1953, appeared to grant the state jurisdiction. It concluded, nonetheless, that con-

---

* The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

1. Section 1162(a) provides in relevant part:
   Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed . . . in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:

   . . . .

   Oregon . . . . . . . . . . All Indian country within the State, except the Warm Springs Reservation.

2. Section 1321(a) provides:
   The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, *with the consent of the Indian tribe occupying the particular Indian country or part thereof which could be affected by such assumption*, such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.
   The italicized portion of the 1968 legislation is discussed infra.

gressional adoption of § 1321 in 1968 signalled a change in congressional philosophy toward Indians, meaning that "Congress may have limited the scope of § 1162, *sub silentio* to the Indian country that existed in Oregon in 1953." *Id.* at 837. Because the Burns Paiute Reservation was created in 1972, the court concluded that § 1162 did not apply. And because the consent of the Indian tribe had not been obtained, Oregon could not base jurisdiction upon § 1321(a). We disagree.

We find that the language and legislative history of § 1162 support its application to the instant case.

*Discussion*

In *Anderson v. Gladden*, 293 F.2d 463 (9th Cir.), *cert. denied*, 368 U.S. 949, 82 S.Ct. 390, 7 L.Ed.2d 344 (1961), this court interpreted § 1162 to apply to all Indian reservations in the enumerated states save those expressly excluded. An enrolled member of the Klamath Tribe sought habeas relief claiming that the state of Oregon did not have jurisdiction to try him for murder. We rejected this claim:

> [Section 1162] withdrew federal jurisdiction over offenses committed in specified areas of Indian country by the grant of exclusive criminal jurisdiction therein to five designated states. Oregon is one of them, and "all Indian country within the state, except the Warm Springs Reservation" is placed under the state's jurisdiction.

*Id.* at 466 (footnote omitted). Our interpretation coincided with the congressional aim of providing state jurisdiction on a general rather than limited basis. S.Rep. No. 699, 83d Cong., 1st Sess., *reprinted in* [1953] U.S.Code Cong. & Admin.News pp. 2409, 2411–12.

■ The district court acknowledged that § 1162 appeared to apply to the instant case. It concluded, nonetheless, that § 1321(a) in effect limited the application of § 1162 because § 1321(a) erected a system

hostile to state jurisdiction without tribal assent. We must reject this conclusion.

First, the language of § 1321(a) specified that it applies to states "not having jurisdiction over criminal offenses committed . . . in the areas of Indian country situated within such state . . . ." Thus, by its own terms it cannot apply at all to states granted jurisdiction by other statutes; this would include Oregon under § 1162.

■ Second, the legislative history of § 1321(a) indicates that it was not intended to limit Oregon's jurisdiction. Section 1162 as enacted in 1953 was § 2 of Public Law 280, 67 Stat. 588. Public Law 280 contained two schemes for state jurisdiction. Section 2 provided that certain states (including Oregon [3]) would automatically gain jurisdiction over criminal matters in Indian country "to the same extent that such State has jurisdiction over offenses committed elsewhere within the State . . . ." Section 7 provided that states not enumerated in § 2 could obtain jurisdiction over criminal matters in Indian country only "by affirmative legislative action" of the State.

Many Indians objected to § 7 because it gave states the option to assume jurisdiction without assent of the tribes. Section 1321(a) was passed in 1968 to supplant the § 7 scheme by requiring tribal consent to states' assuming optional jurisdiction. It was not intended to affect the § 2 scheme providing automatic jurisdiction for the enumerated states. *See, e. g.,* Rights of Members of Indian Tribes: Hearings on H.R. 15419 Before the Subcomm. on Indian Affairs of the House Committee on Interior and Insular Affairs, 90th Cong., 2d Sess. 32 (statement of Congressman Glenn Cunningham); *supra* at 34 (statement of Congressman Robert V. Denney); *supra* at 115–16 (statement of Arthur Lazarus, Jr.); S.Rep. No. 841, 90th Cong., 1st Sess., *reprinted in supra*, 10, 15; S.Rep. No. 721, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. &

---

**3.** Section 1162(a) expressly excepts the Warm Springs Reservation, which is not involved in the present case.

Admin.News pp. 1865, 1866 (Senator Sam Ervin, Jr.). Because Oregon bases its jurisdiction upon § 2 (18 U.S.C. § 1162), and not § 7, § 1321 cannot affect its jurisdiction.[4]

The Act of Oct. 13, 1972, Pub.L. No. 92–488, 86 Stat. 806, which created the Burns Paiute Reservation, supports the foregoing views. The first section describes approximately 762 acres of land in Township 23 South, Range 30 East, in Harney County, Oregon, that were acquired by the United States under three different statutes: Act of June 16, 1933, ch. 90, 48 Stat. 195; Act of Apr. 8, 1935, ch. 48, 49 Stat. 115; Act of Aug. 24, 1935, ch. 641, 49 Stat. 750. Referring to those acres, § 1 of the 1972 Act continues: "that are now administered by the Secretary of the Interior for the benefit of the Burns Indian Colony, Oregon, are hereby declared to be held by the United States in trust for said colony, and to be an Indian reservation for the use and benefit of said colony." Section 2 then states that there shall also be held in trust for the Burns Indian Colony and added to the reservation established by § 1, a ten-acre parcel in the same Township, which was conveyed to the United States in 1928, and "which properly has been used and occupied since purchase as a permanent camp or place of residence for the Burns Indian Colony of Harney County." Under the decision in *United States v. McGowan*, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410 (1937), which dealt with the Reno Indian Colony in Nevada, the lands of the Burns Indian Colony in Oregon were "Indian Country" before the reservation was created in 1972. *See also United States v. John*, 437 U.S. 634, 98 S.Ct. 2541, 57 L.Ed.2d 489 (1978).

■ It is clear that at least ten acres of the Burns Paiute Reservation were Indian country as early as 1928. The record does not show whether the other 762 acres were Indian country before 1953, when Public Law 280, embodying 18 U.S.C. § 1162(a), was enacted, but it would appear probable that they were. If so, the state of Oregon was expressly given jurisdiction under § 1162(a) over the lands of the Burns Indian Colony and that jurisdiction has not been terminated. If 762 acres of the land did not become Indian country until after the 1953 statute was enacted, then those lands were under the jurisdiction of the state of Oregon, like all other non-Indian country in the state. Under either state of facts, it cannot be said that § 1321(a) applies to those lands. They are not areas of Indian country in Oregon in which Oregon does not have jurisdiction over criminal offenses committed by or against Indians, referred to in § 1321(a).

Finally, it is apparent that the district court was guided largely by its perception that Congress has become increasingly solicitous of Indian rights and that its holding would favor such rights. In another context, however, the Supreme Court admonished:

> [A]s the second Mr. Justice Harlan said . . ., a statute "is not an empty vessel into which this Court is free to pour a vintage that we think better suits present-day tastes." *United States v. Sisson*, 399 U.S. 267, 297, 90 S.Ct. 2117, 2133, 26 L.Ed.2d 608 (1970). Considerations of this kind are for the Congress, not the courts.

*National Broiler Marketing Association v. United States*, 436 U.S. 816, 827, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978).

Because the State of Oregon has exclusive jurisdiction under § 1162, we vacate the judgments of the district court.

VACATED.

---

4. This reading of the legislative history is particularly compelling because of the strong disfavor shown judicial inferences of implied repeal of statutes by subsequent legislation. See *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168, 96 S.Ct. 1319, 47 L.Ed.2d 653 (1976); *SDC Development Corp. v. Mathews*, 542 F.2d 1116, 1118 n.5 (9th Cir. 1976). There is here no "manifest inconsistency or positive repugnance between the two statutes" that would warrant an inference that § 1321(a) was intended to repeal implicitly § 1162(a) as to reservations created after 1953. *See Mercantile National Bank at Dallas v. Langdeau*, 371 U.S. 555, 565, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963).