COURT OF APPEALS
DECISION
DATED AND FILED

July 6, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1378-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2018CF1649**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

DOUGLAS LYLE HOUSE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Brown County: THOMAS J. WALSH, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Douglas House appeals from a judgment of conviction for second-degree sexual assault, as a repeater, and from an order

denying his motion for postconviction relief. House claims that both he and the victim are registered members of the Oneida Nation and that the crime took place on Oneida land. House therefore asserts that the State of Wisconsin lacked jurisdiction over the crime, and, accordingly, his conviction must be reversed.

¶2      We conclude that the State had jurisdiction over the crime at issue in this case pursuant to 18 U.S.C. § 1162 (2018),[1] more commonly known as Public Law 280. We reject House's argument that Public Law 280 is unconstitutional. We therefore affirm.

## BACKGROUND

¶3      The State charged House with second-degree sexual assault, as a repeater. The complaint alleged that the crime occurred at House's residence on Jonas Circle in the Village of Hobart, in Brown County. The case proceeded to a jury trial, and the jury found House guilty of the crime charged.

¶4      After sentencing, House filed a motion for postconviction relief, asking the circuit court to vacate his conviction on the grounds that the State lacked jurisdiction over the charged offense. In his motion, House alleged that he and the victim are both registered members of the Oneida Nation and that the crime "occurred on land established for the Oneida Nation to hold as 'Indian Lands.'" House acknowledged that Public Law 280 "purports" to grant the State jurisdiction over crimes "committed by Indians in areas of Indian country." He argued, however, that Public Law 280 is "facially unconstitutional as it exceeds the limits of Congress's delineated authority." More specifically, House

---

[1]  All references to the United States Code are to the 2018 version.

contended that the Oneida Nation is a sovereign nation, and that the United States Constitution does not grant Congress the plenary power to regulate the criminal activity of citizens of a sovereign nation within that nation's boundaries.

¶5      The State did not file a response to House's postconviction motion. The circuit court denied the motion in a written decision, without holding a hearing. The court concluded that Public Law 280 clearly granted the State criminal jurisdiction over House's crime, given that "House is a registered member of the Oneida Nation and committed an offense on the Oneida Reservation against another member of the Oneida Nation." The court then rejected House's argument that Public Law 280 is facially unconstitutional. Specifically, the court concluded that Congress had authority to enact Public Law 280 under its "plenary power to legislate with respect to Indian affairs." House now appeals.

## DISCUSSION

¶6      On appeal, House does not dispute that he committed the crime of which he was convicted. In addition, House does not dispute that, under the circumstances presented, Public Law 280 granted the State criminal jurisdiction over his crime. Instead, House contends that his conviction must be vacated because Public Law 280 is unconstitutional "as applied to the sovereign Oneida

Nation."[2]   The constitutionality of a statute presents a question of law that we review independently.  *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63.

¶7      Public Law 280 "was enacted by Congress in 1953 in part to deal with the 'problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement.'"  *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 471 (1979) (citation omitted).  Public Law 280 provides:

> Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory[.]

18 U.S.C. § 1162(a).  Wisconsin is one of the states listed in the table.  *Id.*  The table specifies that the "Indian country affected" within Wisconsin is "[a]ll Indian country within the State."[3]  *Id.*

---

[2] In the circuit court, House argued that Public Law 280 is facially unconstitutional—i.e., that it cannot be enforced under any circumstances.  *See State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63.  On appeal, House claims he is not arguing that Public Law 280 is facially unconstitutional but, rather, that it is unconstitutional "as applied to the sovereign Oneida Nation."  Despite this characterization, some of House's appellate arguments appear to relate to a facial challenge to Public Law 280, rather than an as-applied challenge.  Regardless of how House's challenge to the constitutionality of Public Law 280 is framed, we conclude that his claim fails for the reasons set forth below.

[3] For the purposes of Public Law 280, "Indian country" is defined to mean:

(continued)

4

¶8 As noted above, House alleged in his postconviction motion that he and the victim are registered members of the Oneida Nation and that the crime took place on Oneida land. The circuit court did not take any evidence on House's motion. Instead, for the purposes of its decision, the court essentially assumed that the factual allegations in House's motion were true. On appeal, we similarly assume, without deciding, that the factual allegations in House's motion are true—i.e., that House and the victim are registered members of the Oneida Nation and that the crime took place on Oneida land.[4] Given the factual allegations in

> (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

18 U.S.C. § 1151.

[4] In its appellate brief, the State asserts that given the location of the crime, as well as public mapping, we may take judicial notice that the crime "appears to have taken place on the Oneida Reservation." The State argues, however, that House "cites no evidence in the record or publicly available documents" to support his claim that he and the victim are both registered members of the Oneida Nation. The State contends that "unless [House] or the victim are Indians, House cannot demonstrate he was injured by Public Law 280, and he therefore lacks standing to challenge Public Law 280."

We choose to assume, without deciding, that House and the victim are registered members of the Oneida Nation and that the crime took place on Oneida land. House alleged these facts in his postconviction motion. The State did not file a response to House's motion, and, as such, it did not dispute House's factual allegations. Had the State done so, House could have filed additional documentation supporting the factual allegations in his motion. Moreover, the circuit court denied House's motion without a hearing, which again prevented House from submitting evidence to substantiate his factual allegations.

(continued)

House's motion, it is clear that Public Law 280 grants the State criminal jurisdiction over the crime at issue in this case. The only issue is whether the grant of criminal jurisdiction in Public Law 280 is unconstitutional.

¶9 In essence, House argues that Public Law 280 is unconstitutional because the Oneida Nation is a sovereign nation, and nothing in the text of the United States Constitution grants Congress plenary power over sovereign Indian nations. House therefore asserts that Congress "does not have the authority to regulate criminal jurisdiction in sovereign nations, particularly the Oneida Nation." Because Congress "cannot delegate an authority it does not have," House contends that Public Law 280 "exceeds the Constitutional powers granted to Congress" and is therefore unconstitutional.

¶10 We reject House's argument because it is contrary to controlling United States Supreme Court precedent. The Supreme Court has expressly stated that the Constitution "grants Congress broad general powers to legislate in respect to Indian tribes, powers that we have consistently described as 'plenary and exclusive.'" *United States v. Lara*, 541 U.S. 193, 200 (2004) (citation omitted). The Supreme Court "has traditionally identified the Indian Commerce Clause, U.S. CONST., Art. I, § 8, cl. 3, and the Treaty Clause, Art. II, § 2, cl. 2, as sources of that power." *Lara*, 541 U.S. at 200. In particular, the Supreme Court has stated that the "central function of the Indian Commerce Clause" is to "provide Congress

Neither the State nor the circuit court ever suggested during the circuit court proceedings that House lacked standing to challenge the constitutionality of Public Law 280. Instead, the court simply accepted the factual allegations in House's motion as true and then rejected his constitutional claim on the merits. Under these circumstances, we conclude it would not be fair to House to resolve this appeal on the grounds that House has failed to establish that he has standing to challenge the constitutionality of Public Law 280. Like the circuit court, we therefore address the merits of House's constitutional claim.

with plenary power to legislate in the field of Indian affairs." ***Id.*** (citation omitted). Congress's power under the Indian Commerce Clause is "broad" and is not strictly limited to regulating commerce. *See **id.*** In ***Lara***, for instance, the Court held that Congress had authority—derived in part from the Indian Commerce Clause—to relax restrictions on tribes' power to prosecute members of other tribes. *See **id.*** at 200-02.

¶11     In addition to the Indian Commerce Clause and the Treaty Clause, the Supreme Court has also attributed Congress's plenary power over Indian nations to "Congress's protectorate or trust relationship with the Indian tribes." ***United States v. Long***, 324 F.3d 475, 479 (7th Cir. 2003) (citing ***United States v. Kagama***, 118 U.S. 375, 383-84 (1886)). In ***Kagama***, the Supreme Court considered whether Congress could enact a law giving federal courts jurisdiction over various crimes committed by "Indians … against the person or property of another Indian or other person, within the boundaries of any state of the United States, and within the limits of any Indian reservation." *See **Kagama***, 118 U.S. at 376-77 (citation omitted). The Court upheld the law, reasoning that Congress's authority to enact it flowed from the status of Indian tribes as "wards of the nation" and "communities *dependent* on the United States."[5] ***Id.*** at 383-84.

¶12     Based on ***Lara*** and ***Kagama***, which are settled United States Supreme Court precedent, we reject House's argument that Congress lacks plenary power over Indian tribes, in general, and over the Oneida Nation, in particular.

---

[5] House argues that ***United States v. Kagama***, 118 U.S. 375 (1886), was wrongly decided. However, we are bound by decisions of the United States Supreme Court on matters of federal law. ***State v. Jennings***, 2002 WI 44, ¶18, 252 Wis. 2d 228, 647 N.W.2d 142. As such, we are not at liberty to disregard ***Kagama***'s holding or to conclude that case was wrongly decided.

*Lara* and *Kagama* establish that Congress has broad, plenary power "to legislate in the field of Indian affairs." *See Lara*, 541 U.S. at 200 (citation omitted). Those cases further establish that Congress's power—even if derived in part from the Indian Commerce Clause—is not strictly limited to the authority to regulate commerce and extends to the regulation of criminal jurisdiction over crimes committed within Indian country.

¶13  As the State concedes, the United States Supreme Court has never directly addressed whether Public Law 280 is unconstitutional on the grounds that Congress lacked the authority to enact it. The State notes, however, that both the United States Supreme Court and the Wisconsin Supreme Court have cited and analyzed Public Law 280 "without expressing concern that Congress lacked authority to enact it." *See, e.g.*, *Bryan v. Itasca Cnty., Minn.*, 426 U.S. 373, 379 (1976); *Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. at 472; *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207-08 (1987), *superseded on other grounds by statute*; *State v. Burgess*, 2003 WI 71, ¶12, 262 Wis. 2d 354, 665 N.W.2d 124. This fact further militates against a conclusion that Public Law 280 is unconstitutional.

¶14  In addition, we note that lower courts in other jurisdictions have upheld Public Law 280 as a valid exercise of Congress's plenary power to regulate Indian affairs. *See State v. Fanning*, 759 P.2d 937, 938-39 (Idaho Ct. App. 1988) (collecting cases). In *Fanning*, the appellant argued that the State of Idaho could not prosecute and convict her of driving a motor vehicle while under the influence

of alcohol because she was "a Coeur d'Alene Indian."[6] *Id.* at 937. The appellant contended that Public Law 280's delegation of criminal jurisdiction to the State of Idaho was unconstitutional "because Congress could only have been acting pursuant to the Commerce Clause of the United States Constitution, and she was not engaging in an act of commerce" at the time of the offense. *Id.* at 939.

¶15 The Idaho Court of Appeals rejected the appellant's constitutional challenge to Public Law 280. The court reasoned that the United States Supreme Court "has recognized Congress's authority to manage Indian affairs not only pursuant to the Commerce Clause, but also pursuant to the Treaty Clause and a variety of other provisions." *Id.* (citations omitted). The court further explained that "the federal-tribal relationship is premised upon broad, albeit not unlimited, federal constitutional power over Indian affairs," and "the relation of the Indians to the United States is marked by peculiar and cardinal distinctions which exist nowhere else." *Id.* (citation omitted). Given the "complex relationship between the federal government and the tribes," the court refused to adopt the appellant's "simplistic constitutional interpretation" that Public Law 280 was unconstitutional because Congress's authority to legislate with respect to Indian tribes was limited to the regulation of commerce. *Id.* at 939-40.

¶16 Based on the authorities discussed above, we reject House's argument that Public Law 280 is unconstitutional because Congress lacked the authority to enact it. The United States Supreme Court has clearly held that

---

[6] The Idaho Court of Appeals assumed, for the purposes of its decision, that the intersection where the crime occurred was within "Indian country" and that the appellant was an enrolled member of the Coeur d'Alene tribe. *State v. Fanning*, 759 P.2d 937, 937 (Idaho Ct. App. 1988).

9

Congress has broad, plenary power "to legislate in the field of Indian affairs." *See Lara*, 541 U.S. at 200 (citation omitted). Although the source of that power has been the subject of academic dispute, the *existence* of the power is not in dispute. We therefore conclude that Public Law 280 was lawfully enacted pursuant to Congress's plenary power to regulate Indian affairs.

¶17    House nevertheless argues that Congress could not lawfully enact Public Law 280 because the Oneida Nation is a sovereign nation, and neither the United States Constitution nor any other source of law gives Congress the authority to grant a state criminal jurisdiction over crimes committed in a sovereign nation by and against citizens of that nation. House's reliance on general principles of tribal sovereignty is misplaced. "Although at one time [Indian tribes] may have had the status of independent nations, they lost their full independence by virtue of their conquest first by European and then by American colonizers—a loss that was later ratified by treaties." *Long*, 324 F.3d at 479. Indian tribes are now "viewed as quasi-independent or domestic dependent nations within the United States." *Id.* They "retain the powers of a sovereign nation in the limited realm of internal affairs, subject to Congress's power completely to divest the tribes of such sovereignty." *Id.* Here, as explained above, Congress has used its broad, plenary power to grant the State of Wisconsin criminal jurisdiction over "offenses committed by or against Indians in the areas of Indian country" within this state. *See* 18 U.S.C. § 1162(a).

¶18    In addition, we note that in 1871, Congress enacted 25 U.S.C. § 71, which provides that

> [n]o Indian nation or tribe within the territory of the United States shall be acknowledged or recognized as an independent nation, tribe, or power with whom the United States may contract by treaty; but no obligation of any

10

> treaty lawfully made and ratified with any such Indian nation or tribe prior to March 3, 1871, shall be hereby invalidated or impaired.

By passing 25 U.S.C. § 71, Congress prohibited the further recognition of Indian tribes as independent nations. House contends that "as applied to the sovereign Oneida Nation, 25 U.S.C. § 71 is unconstitutional, and as such, Public Law 280 must also be unconstitutional." House does not present a developed argument, however, as to why he believes 25 U.S.C. § 71 is unconstitutional. We need not address arguments that are undeveloped or unsupported by references to legal authority. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶19     House also cites *Worcester v. Georgia*, 31 U.S. 515 (1832), for the proposition that tribal nations were considered to be sovereign nations at the time the Constitution was ratified. However, *Worcester* predates the enactment of 25 U.S.C. § 71, and it also predates modern Supreme Court cases affirming Congress's plenary power to regulate Indian affairs. Moreover, the Supreme Court has expressly stated that although tribes are often referred to as sovereign entities, the Court "long ago" departed from *Worcester*'s view that the laws of a State can have no force within a reservation's boundaries. *See Nevada v. Hicks*, 533 U.S. 353, 361 (2001) (citation omitted).

¶20     House also argues that the United States continued to engage in treaties with the Oneida Nation after the Constitution was ratified, which shows that the Oneida Nation retained its sovereignty and that Congress lacked plenary power over the Oneida Nation. We reject this argument because it ignores the Supreme Court precedent discussed above, which clearly holds that Congress has plenary power to legislate in the field of Indian affairs. *See Lara*, 541 U.S. at 200.

11

¶21 For all of the reasons explained above, we reject House's argument that Congress lacked the authority to enact Public Law 280. Accordingly, we affirm House's judgment of conviction and the order denying his motion for postconviction relief.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).